Argued July 13, decided December 13, 1910.

## SHIELDS v. SOUTHERN PAC. CO.

[112 Pac. 4.]

RAILROADS—OPERATION—INJURIES TO PERSONS ON TRACKS—LICENSES—
DUTY TO WARN.

1. A railroad company owes licensees who cross its tracks no duty to warn them of passing trains; the track itself being a sufficient warning.

APPEAL AND ERROR—PREJUDICIAL ERROR—INSTRUCTIONS—FAILURE TO
GIVE.

2. Where a jury, in an action against a railroad company for an injury received by a licensee on the track, requests an instruction as

to whether or not it was negligence for the railroad to permit persons to cross its track without signals of warning, the failure of the court to instruct them that it is not negligence is reversible error.

From Multnomah: THOMAS O'DAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by Richard Shields against the Southern Pacific Company and the Northern Pacific Terminal Company, for damages sustained by plaintiff on account of an injury, occasioned by being struck by a railway engine of the Southern Pacific Company near the depot in the city of Portland. A railway bridge, which crosses the Willamette River near the depot, has an upper deck for the accommodation of public travel, while the lower deck is used exclusively by the railroad companies for the passage of their trains. This bridge is owned by the Oregon Railway & Navigation Company, but is used also by the Southern Pacific Company under some arrangement, the details of which do not appear in the evidence. There is a stairway upon the north side of the bridge and near its westerly end, leading from its upper deck to the ground, just east of the east line of Front street, where the upper deck of the bridge passes over the street, which was built by the Oregon Railway & Navigation Company. By the side of the stairway, and alongside of the railway track crossing the bridge, are two large piers several feet in diameter, which support the upper deck of the bridge. The railroad track crossing the bridge begins to curve a short distance east of the point where it passes the bridge piers.

There is evidence tending to show that a person passing down the steps to the ground would be unable to see along the lower deck of the bridge or to see a train crossing the bridge from the east, until it emerged from between the piers or about 70 feet from where a person descending the stairway on his way to Front street usually crossed the railway track leading from the bridge

to the Union Depot. The evidence tends to show that a large number of persons used these steps and crossed the track daily, on their way to Front street, without objection by the railway company; and that no signs, forbidding such use of the stairway, were in existence. An ordinance of the city prohibits trains from running faster than six miles per hour within the city limits. There is some testimony, on plaintiff's part, tending to show that, at the time of the accident, the train was running at a speed of from 12 to 20 miles per hour; but this is strongly contradicted by the evidence of defendant. Plaintiff walked across the bridge, toward his place of business, went down the stairway, and was proceeding across the track, in order to reach Front street, when he was struck by a locomotive, attached to a passenger train, and was injured.

Plaintiff testified that, owing to there being a number of tracks at the west end of the bridge, it was impossible for him to tell at a glance upon which of them the train was coming in, and was unable, by using his best endeavor, to escape injury; that he stopped, looked, and listened, before starting to cross the track, and did not hear any bell or noise indicating an approaching train; that he stopped just before he reached the first track and waited a few minutes to make sure there was no train coming, and no danger, then started across, and first saw the train as it emerged from the bridge, when it was about 70 or 80 feet distant; that, being confused as to which track it was on, he attempted to escape by taking the shortest way across the track.

The jury were permitted to view the locality where the accident occurred. Before the cause was submitted, plaintiff took a voluntary nonsuit as to the terminal company, leaving the Southern Pacific Company the sole defendant. After the jury had retired for deliberation,

they returned into court and propounded the following question:

"Is it unlawful or even a presumption of negligence for a railroad company to permit the use of a path or steps leading to its property on which trains are operated, without giving the public warning of danger?"

In answer to this question, the court used the following language:

"Gentlemen, this question which you have submitted to me is a combination of law and fact. It is one that I cannot answer directly, because if I did that would be trespassing upon your right to pass upon the facts. I will say, however, that probably I can answer the proposition as to the law without trespassing upon your province to pass upon the facts. And I will premise that by saying that if you find that these steps, where they landed, were on private property, of course it goes without saying that a person who owns private property can prevent others from going thereon. What I desire to say, and what the law is, is this: If the public are permitted to use it, and that use has extended for such a time that the company might have reasonably expected to have notice of its use, they would have to use such ordinary property subject to this use of the public. That is, they would have to use such ordinary care as an ordinarily prudent person would use to prevent injury. It would be akin to the use of a street, and it would be their duty to use such reasonable ordinary care in regard thereto as it would be to use ordinary care where they cross a street."

The defendant excepted to the giving of this instruction and the failure of the court to answer the question propounded by the jury, and requested the court to instruct as follows:

"I will ask your honor to instruct the jury that it will not be the duty of the company—that is, I mean, it would not be affirmatively the duty of the company—to warn the public, and that that question should be answered in the negative as a matter of law."

This request was refused by the court and an exception allowed. Thereafter the jury returned a verdict for the plaintiff in the sum of $4,850. Defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter* and *Mr. Ben C. Dey,* with oral arguments by *Mr. Fenton* and *Mr. Dey.*

For respondent there was a brief with oral arguments by *Mr. Hayward H. Riddell* and *Mr. Jay H. Upton.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The congested condition of the docket of this court precludes us from any extended discussion of the facts upon which counsel for defendant predicates the contention that a nonsuit should have been granted by the court below. We have carefully considered the evidence and do not agree with counsel in their contention that the physical facts so contradict the testimony of witnesses that the latter should be rejected as a matter of law. Much of this testimony related to the speed of the train, the opportunity that plaintiff had of observing its approach and protecting himself from danger by the exercise of ordinary care. Upon all these matters we think the plaintiff introduced sufficient testimony to make a case for a jury, and that the court properly refused a nonsuit.

We find one material error, however, which compels us to reverse this case, and that was the refusal to answer the question propounded by the jury. This action was predicated upon the alleged negligence of defendant in two particulars: (1) Running at an unusual and unlawful rate of speed; (2) failing to give warning by ringing the bell or blowing the whistle. No question of posting notices or warnings at or about the steps was involved,

and as a matter of law none were necessary. The track itself is a sufficient warning of danger. When the jury came in and asked whether it was unlawful or a presumption of negligence for a railroad company to permit the use by the public of a path or steps leading to its track without giving public warning of danger, they should have been told that, so far as the case at bar was concerned, it was not unlawful and did not in itself create a presumption of negligence.

2. The testimony in regard to defendant's negligence in other respects was contradictory, and, considering the nature of the question propounded by the jury, this court cannot say whether the finding of negligence, upon which the verdict was predicated, was within the issues made by the pleadings or upon a failure to post notices upon the stairway warning the public to beware of locomotives. The instruction actually given practically left the minds of the jurors in the same condition that they were in before the question was asked, and did not tend in any way to dissipate any erroneous impression which they may have had, and which some of them evidently did have, that a recovery could be had because of the failure of the company to give public warning of danger.

For the reasons above given, the judgment will be reversed, and a new trial ordered.          REVERSED.